**NBN BROADCASTING, INC.,**
**Plaintiff–Appellant,**

v.

**SHERIDAN BROADCASTING NETWORKS, INC., Ronald R. Davenport, Sr., E.W. "Skip" Finley, Jr., and Richard F. Boland, Jr., Defendants–Appellees.**

**No. 604, Docket 96–7618.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 17, 1996.

Decided Jan. 15, 1997.

As Amended Jan. 30, 1997.

Peter A. Mahler, Derfner & Mahler, LLP, New York City, for Plaintiff–Appellant.

Jill Hertz-Ashman, New York City (Robert F. Brodegaard, John J. Kim, Thacher Proffitt & Wood, New York City, of counsel), for Defendants–Appellees.

Before KEARSE, and CARDAMONE, Circuit Judges, and POLLACK, District Judge.*

MILTON POLLACK, Senior District Judge.

This action arises from the inability of the parties to get along in the operation of a joint venture covered by a partnership Agreement. The plaintiff charges that the principal defendant by transactions conducted allegedly in breach of the Agreement intends to usurp exclusive control of the partnership which is known as American Urban Radio Networks ("AURN" or the "Partnership") as well as to take over sole control of the Partnership assets. A prior suit in State Court which asserted claims on some of the transactions challenged herein was dismissed with prejudice and the judgment therein has been pleaded as *res judicata* in bar of all the claims in this federal court suit as having arisen from the same transaction or series of transactions, albeit having involved differences in the elements of proof, parties and time periods and different relief.

The Amended Complaint herein charges that defendants have sought, and continue to seek, to deprive plaintiff of its valuable equal rights as general partner in the management and conduct of the Partnership business, and to arrogate to themselves the business and profits of the Partnership and ultimately to control the assets through a "squeeze out" or otherwise, and plaintiff has sought injunctive relief herein compelling defendants' compliance with the Partnership obligations together with an accounting and damages.

## A. *The Partnership*

Prior to 1991, NBN Broadcasting, Inc. ("NBN") (based in New York City) and Sheridan Broadcasting Networks, Inc. ("Sheridan") (based in Pittsburgh) operated competing radio networks serving primarily the urban listening audience. In December 1991, NBN and Sheridan formed AURN, a Pennsylvania partnership, to combine their operations into a single radio network.

## B. *The Partnership Agreement*

NBN and Sheridan entered into a Partnership Agreement dated December 13, 1991 (the "Agreement"). NBN and Sheridan as general partners have equal rights in the management and conduct of the partnership business.

---

* Honorable Milton Pollack, of the United States District Court for the Southern District of New York, sitting by designation.

The partners' co-equal rights to manage AURN are modified to an expressly limited extent by sections 5.2 and 5.3 of the Agreement. Section 5.2 creates a five-member management committee (the "Management Committee") composed of two members designated by NBN and two members designated by Sheridan, with the fifth seat remaining vacant to be filled only in the event of Management Committee deadlock pursuant to section 5.3. Section 5.2 further specifies:

> The Management Committee shall be responsible for the following functions of the partnership and contractual arrangements relating thereto:
>
> (i) Sales and marketing;
>
> (ii) Promotions and public relations;
>
> (iii) Affiliate relations and compensation;
>
> (iv) Network programming;
>
> (v) Personnel administration; and
>
> (vi) Budgeting, accounting and finance.

The deadlock provision, section 5.3, provides in pertinent part as follows:

> (a) In the event that three of the four members of the Management Committee are unable to reach agreement on any issue or issues relating to items (i) through (v) above and remain so unable for a period of thirty days, then Ronald R. Davenport ("Davenport"), Chairman of [Sheridan], shall have the right to fill the vacant seat on the Management Committee for the purpose of reaching an agreement, and only until an agreement is reached, on such issue or issues.

Section 5.3 does not authorize appointment of a fifth member by Davenport in the event of a Management Committee deadlock with respect to budgeting, accounting or finance under section 5.2(vi) or any matters other than those specifically enumerated in section 5.2(i) through (v). As to budgeting, accounting and finance and all other nonenumerated matters (including office location governed by section 1.3), under the Agreement and Pennsylvania law NBN and Sheridan are co-equal general partners and all decisions on such matters require unanimity between the partners.

## C. *The State Court Action*

At a meeting of the Management Committee on September 14, 1995, Davenport offered a resolution to open at substantial expense a new AURN office in Washington, D.C. (the "D.C. Office"), which NBN's two appointees to the Management Committee opposed. Davenport thereupon scheduled another meeting of the Management Committee for October 16, 1995, for the express purpose of his appointing a fifth member to break the deadlock.

On September 15, 1995, NBN brought a declaratory judgment action against Sheridan as sole defendant in Supreme Court, New York County (the "State Court Action"), seeking a declaration that the proposed D.C. Office relates to budgeting, accounting and finance within the meaning of section 5.2(vi) of the Agreement and therefore was not subject to the deadlock voting provision. NBN's complaint also sought to enjoin preliminarily and permanently Sheridan from causing AURN to open a Washington, D.C. Office without NBN's consent. No other facts were pleaded and no other relief was sought.

In advance of the scheduled meeting to appoint a fifth member of the Management Committee in order to invoke the deadlock provision of the Agreement and on October 10, 1995, NBN moved for a preliminary injunction to restrain Sheridan from opening a Washington, D.C. Office of AURN without NBN's consent. The motion also sought to enjoin Sheridan from causing AURN to employ Finley and Boland, as Davenport had proposed at the September 14 Management Committee meeting, and from causing AURN to implement various new business ventures set forth in a proposed business plan mentioned at that meeting, without the consent of NBN's appointees on the Management Committee.

Sheridan opposed the attempt to obtain an injunction, arguing that NBN did not meet the traditional tripartite test therefor, *viz.*, likelihood of success on the merits, irreparable injury absent an injunction, and a balancing of the equities in the movant's favor. Sheridan contended that NBN's motion was "premature" because Sheridan did not at

that time intend that AURN open a D.C. Office. As to the implementation of Sheridan's proposed business plan and the hiring of Finley and Boland, Sheridan argued that NBN could not establish any likelihood of success on the merits because "the actions that NBN seeks to enjoin are unrelated to the allegations in its complaint" limited to the D.C. Office.

The State Court denied NBN's motion by Order dated October 13, 1995, ruling that NBN had "not met the tripartite test for preliminary injunction." The Justice noted her opinion that she agreed with Sheridan's claimed right to use the voting deadlock procedure to "make additions to personnel."[1] Sheridan thereupon served an Answer raising affirmative defenses, inter alia, that the complaint's claims relating to the D.C. Office were both moot and not ripe for adjudication.

On October 19, 1995 Sheridan moved in the State Court Action for summary judgment. The supporting affidavit made by Sheridan's General Counsel recited that the issues presented on the motion involved the hiring of Messrs Finley and Boland; that the Management Committee had reached a deadlock on September 14, 1995 with respect to a personnel hiring decision; and that personnel decisions and "contractual arrangements" relating to personnel matters are explicitly subject to the deadlock voting procedure contained in section 5.3 of the Agreement. The moving affidavit also stated that the Management Committee had reconvened on October 16, 1995 to vote on management matters concerning AURN, at which meeting the affiant was appointed the fifth Management Committee member for the sole purpose of voting on the deadlocked issue of whether AURN should hire Finley and Boland; and that by a 3 to 2 vote the Management Committee decided to hire them.

The moving affidavit further stated that the Management Committee as of October 16, 1995 had not voted on the establishment of a new Washington, D.C. Office for AURN; that the D.C. office would not be brought before the Committee without following the procedures contained in the Agreement; that Sheridan had no present intention of seeking to establish a D.C. office; and that even if it did and the Management Committee reached a deadlock on the issue, pursuant to the terms of the Agreement, Davenport would be entitled to appoint a fifth member of the Management Committee to break the deadlock.

Acting on the summary judgment papers, NBN moved to discontinue the State Court Action and requested a discontinuance without prejudice, which was opposed by Sheridan.

These were all the matters placed before the State Court on the motions for summary judgment and the discontinuance of the lawsuit. On November 29, 1995 the motion for a discontinuance was granted, but with prejudice.

On November 29 and 30, 1995, the State Court issued two separate orders disposing of the matter. The November 29 order provides that Sheridan's

cross-motion to discontinue is granted with prejudice but without costs, on this record at this time, in the exercise of judicial grace.

The November 30 order provides that NBN's motion[2]

for an order authorizing voluntary discontinuance is granted in part; the discontinuance is to be with prejudice, but there are to be no charges by either side against the other for attorney's fees. The court notes that its ruling contemplates a final end to this unnecessary litigation.

Meanwhile a new and different controversy was brewing involving a proposal to relocate the New York Office which had not formed

---

1. On October 20, 1995, NBN filed an appeal from the October 13 order and moved in the Appellate Division, First Department, for an injunction pending appeal. That same date NBN's application for interim relief pending its motion was heard and denied by a single Justice of the Appellate Division. On October 24, NBN voluntarily withdrew its motion.

2. After the District Court's decision below, NBN timely filed an appeal to the Appellate Division, First Department, from the November 29 and November 30 orders. To date NBN has not perfected its appeal.

any part of the thrust for summary judgment asserted by Sheridan.

### D. *The Events Post the Discontinuance Motion*

On November 28, 1995, *after* NBN's motion to discontinue its State Court claims was *sub-judice,* a meeting of the AURN Management Committee was held at Sheridan's behest to invoke the voting deadlock procedure with respect to three new resolutions that had been proposed on October 16, 1995 as Management Committee resolutions by Sheridan. Specifically, the resolutions purported to authorize the relocation of AURN's New York offices from NBN's office space to other office space in the New York City area; to transfer from the New York office to the Pittsburgh office AURN's traffic, continuity, billing and collection functions; and to require AURN's Chief Operating Officer (*i.e.,* Finley) to review and make cuts in AURN's New York based marketing and research personnel.

As an inducement to NBN to enter into the partnership, Sheridan had agreed that AURN would sublease from NBN office space at NBN's New York offices. Since inception AURN also has maintained offices in space subleased from Sheridan at the latter's Pittsburgh offices. These arrangements were made to facilitate direct oversight and input by AURN's Co–Chairmen and Co–CEOs, Sydney Small (Chairman of NBN) and Davenport (Chairman of Sheridan), and by other NBN and Sheridan personnel who are not on the AURN payroll or who receive partial salary reimbursement for their efforts on AURN's behalf.

At the November 28 meeting, over NBN's objection, Davenport invoked the Agreement's deadlock provision to appoint his son, Ronald Davenport, Jr. ("Davenport Jr."), as the fifth voting member of the Management Committee and thereby to break the 2–2 deadlock on the October 16 proposals and adopt the three controverted resolutions. Also at that meeting, Davenport proposed a new resolution to promote Finley to Chief Executive Officer/Chief Operating Officer and Boland to Vice President of Administration. NBN Chairman Small specifically ob-

jected to the attempt to supersede his own authority as Co-Chief Executive Officer of AURN. A 2–2 vote ensued on the new resolution, with NBN's representatives opposing, whereupon Davenport scheduled another meeting in 30 days for the purpose of a tie-breaker vote under section 5.3 of the Agreement.

At the next meeting of the Management Committee on January 18, 1996, Davenport again appointed Davenport Jr. as a fifth voting member and purported to adopt by 3–2 vote, with NBN's two representatives again opposing, the resolution making Finley CEO/COO and Boland Vice President of Administration.

In the months following the November 28 meeting, on the strength of the tie-breaker vote thereon, Davenport Jr. undertook to locate new office space for AURN in New York City and to enter into lease arrangements, all of which efforts were allegedly kept secret from NBN. In February 1996, NBN learned that Sheridan had targeted April 1, 1996, as the date for relocating AURN's New York offices out of the NBN offices. Over the next two months Sheridan allegedly refused to reveal to its partner NBN the location of the new office space in New York away from NBN's premises, the sub-lease of which had formed part of the inducement to enter into the partnership as mentioned above, or to seek partnership approval of the relocation and new lease which contemplated a multi-year minimum liability over $900,000.

### E. *The Federal Court Complaint*

On January 31, 1996, NBN filed an Amended Complaint, which is the focus of this appeal.

In addition to Sheridan, which was the sole defendant in the State Court Action, the federal Amended Complaint names as defendants Davenport, Finley and Boland in their individual capacities. The gravamen of the Amended Federal Complaint is alleged violation of the equal rights of the general partners in the management and conduct of the partnership business and affairs not delegat-

ed to the Management Committee by the Agreement.

The Amended Complaint's factual allegations fall into four groupings. The first grouping concerns defendants' improper hiring of Finley as AURN's CEO/COO and Boland as Vice President and the defendants' unauthorized use of the voting deadlock provision to secure Management Committee approval to hire Finley and Boland at the meeting on October 16, 1995. Next, the Amended Complaint asserts numerous alleged instances of misconduct by the defendants designed to interfere with AURN's personnel and customer relations as a critical element in their alleged scheme to usurp control over AURN and its assets.

NBN further complains of the unilateral action by defendants to relocate AURN's New York offices out of the NBN offices and thus to deprive NBN of its on-site ability to manage AURN's New York operations and to injure NBN financially by depriving it of rental income which NBN depends on to meet its own lease obligations and which was a material part of entering into the Agreement. NBN alleges that this violates section 1.3 of the Agreement requiring NBN's approval of any New York office relocation. NBN also contests Davenport's reliance on section 5.3 of the Agreement to break the voting deadlock on the proposed New York Office relocation at the November 28 meeting of the Management Committee.

The Amended Complaint is pleaded as seven separate claims. The first through third claims are against Sheridan for breach of the Agreement, breach of fiduciary duty, and for an accounting. The fourth claim is against Davenport alleging breach of fiduciary duty. The fifth through seventh claims are against Finley and Boland for inducing breach of contract by Sheridan, breach of fiduciary duty and aiding and abetting breach of fiduciary duty. The Amended Complaint's prayer for relief seeks preliminary and permanent injunctive relief, an accounting by Sheridan, and damages.

## F. *The Proceedings and Decision Below*

In March 1996, defendants moved to dismiss the several claims in the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim on the ground NBN's claims are barred by *res judicata* created by the dismissal with prejudice of the State Court suit on the October 19, 1995 motion for summary judgment on the issues presented thereon. In essence, defendants argue that the several claims raised in the Amended Complaint either were raised by NBN in the State Court Action, or otherwise concerned events that occurred during the pendency of the State Court Action, and were therefore precluded by the discontinuance with prejudice of the summary judgment motion and the State Court Action.

In opposing defendants' motion, NBN argued that the claims in the State Court Action and the Amended Complaint not only involve different defendants, but also involve fundamentally different factual nuclei, time periods, causes of action and relief. NBN also emphasized that defendants' *res judicata* argument contradicts Sheridan's repeated representations in the course of the State Court Action that the D.C. Office was the only issue involved in that case.

In an Amended Opinion and Order dated April 24, 1996, Judge Mukasey granted defendants' motion and dismissed the action. Pointing to the State Court's denial of NBN's preliminary injunction motion, Judge Mukasey concluded that the same factual predicate underlies both actions, namely, "the dispute over Sheridan's hiring of Finley and Boland and the resulting disagreement over Sheridan's appointment of a fifth manager." Judge Mukasey also concluded that the "entirety of what plaintiff refers to here as defendants' 'takeover scheme' either was litigated before Justice Shainswit [in the State Court Action], or could have been." Finally, Judge Mukasey wrote:

> The only proper response to the dismissal with prejudice, if plaintiff wished to preserve its options, was an appeal to the Appellate Division, not a lawsuit here. It is simply not permissible for this court to exercise appellate authority over a state court.

On appeal to this Court, NBN contends that the matter of relocating AURN's New

York Office was new conduct of the Management Committee postdating the motion for summary judgment and its *sub judice* status; under the 30 day waiting period it had not as yet been voted on and passed directly or indirectly under the voting deadlock procedure and could not have become *res judicata.*

## G. *The Applicable Law*

■ Under applicable law, a discontinuance with prejudice is deemed a final adjudication on the merits for *res judicata* purposes on the claims asserted or which could have been asserted in the suit. That principle is not disputed herein. The issue is whether all of the controversies between the parties, including the attempted relocation of the New York Office fall within the scope of the doctrine.

Quoting from the recent Court of Appeals authority cited hereafter:

Under the claim preclusion branch of res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981).

Simply put, the doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, [i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

*Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983) (internal quotation marks omitted).

*SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1463 (2d Cir.1996).

*Res judicata* "bars future actions between the same parties on the 'same cause of action.' The difficulty arises in determining when a second action involves the same cause of action as an earlier one." *Reilly v. Reid,*

45 N.Y.2d 24, 27, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978) (citations omitted). In *Reilly,* the Court of Appeals adopted the Restatement (Second) of Judgments transactional approach to what constitutes a cause of action for *res judicata* purposes. *Id.* at 29–30, 407 N.Y.S.2d 645, 379 N.E.2d 172. The Restatement (Second) states that a final judgment will bar any subsequent action based on "all or any part of the transaction, or series of connected transactions, out of which the [first] action arose." Restatement (Second) of Judgments § 24(1) (1982). "In general, the expression ['transaction'] connotes a natural grouping or common nucleus of operative facts." *Id.* § 24 cmt.b. What constitutes a single transaction is a factual question to be determined "pragmatically", based on factors such as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations...." *Id.* § 24(2).

■ Any issue concerning the relocation of the New York Office could not have been raised in the State Court suit commenced on September 15, 1995, or until the voting deadlock thereon on November 28, 1995, after the motion became *sub judice* on October 19 and after NBN's motion to discontinue made on November 10, 1995, which became *sub judice* that day, and not until the attempted vote under the deadlock voting provision on November 28, 1995. The NBN claim on the relocation of the New York Office (even assuming for argumentative purposes that it was a subject on which the Management Committee could function at all as an item subject to sections 5.2 and 5.3 of the Agreement) was a claim based on new conduct that could only have arisen long after the filing of the plaintiff's State Court suit. Since a plaintiff has no obligation to expand its suit in order to add a claim that it could not have asserted at the time suit was commenced, a later suit based on the subsequent conduct is not barred by *res judicata. See, e.g., S.E.C. v. First Jersey Securities, Inc.,* 101 F.3d at 1462; *Los Angeles Branch NAACP v. Los Angeles Unified School District,* 750 F.2d

731, 739 (9th Cir.1984), *cert. denied*, 474 U.S. 919, 106 S.Ct. 247, 88 L.Ed.2d 256 (1985).

The *res judicata* effect of the State Court judgment, however, is limited to those claims that had arisen at the time that plaintiff brought the State Court Action. They did not include the relocation of the New York office, which had not yet even been brought to an initial vote. Any collateral estoppel effect of the State Court judgment is of course limited to issues actually decided by that Court and necessary to its decision. *See generally Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487 (1984). The issue of relocation of the New York office was not decided. There was no submission to the State Court of NBN's equal right to decide whether the New York Office should be moved from its existing location as part of NBN's premises.

The doctrine of *res judicata* embraces all claims, excluding those claims relating to the relocation of the New York Office, of the plaintiff which were passed on by the Management Committee prior to the filing of plaintiff's State Court action; and the claims asserted therein and the dismissal thereof on the grounds of *res judicata* is affirmed.

Due to the form in which the seven claims are asserted in the Amended Complaint, it is unclear whether the relocation of the New York Office was intended to be included in the matters on which summary judgment was sought by Sheridan, on the notion that it was a matter within the purview of the Management Committee and thus subject to the defense of *res judicata*. To that extent the judgment is reversed and that matter shall be made the subject of an amended complaint setting forth with specificity the acts complained of in that connection. An appropriate pleading shall be served setting forth with specificity the claim thereon within 15 days from the date of this Order.

Affirmed in part, reversed in part, and remanded.