[714 NYS2d 119]

Vicki Logan et al., Appellants, v Empire Blue Cross and Blue Shield, Respondent.

Second Department, October 10, 2000

**APPEARANCES OF COUNSEL**

*Elkind, Flynn & Maurer, P. C.,* White Plains (*Ira M. Maurer* and *Marc Wietzke* of counsel), for appellants.

*Plunkett & Jaffe,* New York City (*Justin E. Driscoll, III,* and *Gary I. Selinger* of counsel), for respondent.

**OPINION OF THE COURT**

FRIEDMANN, J.

The defendant, Empire Blue Cross and Blue Shield (herein-

after Empire), provided health insurance to each of the appellants.* The instant action arises out of Empire's denial of the appellants' respective claims to provide coverage for intravenous antibiotic treatment of Lyme disease. The amended complaint asserted multiple causes of action on behalf of each appellant, including causes of action to recover damages for breach of contract, and on the ground that Empire acted in bad faith in denying the appellants' respective claims. The appellants also sought punitive damages. The instant appeal presents two issues for our determination: (1) whether Empire's denial of the appellants' claims constitutes a tort independent of its alleged breach of contract, and (2) whether the causes of action asserted by the appellants Vicki Logan and Danny Licul are preempted by the Employee Retirement Income Security Act of 1974 (hereinafter ERISA; *see*, 29 USC 1001 *et seq.*).

The appellants have several things in common. Each allegedly suffers from chronic Lyme disease, which his or her treating physician sought to treat with an extended course of intravenous antibiotics. Further, at all relevant times, each appellant was covered by health insurance policies issued by Empire and each appellant had requested that Empire approve payment for the treatment prescribed by his or her physician. In each instance, Empire denied those requests, leading to the instant action.

Although the exact language contained in the respective policies issued to the appellants is not identical, all of the policies effectively provide the same coverage. That is, Empire agreed to cover "medically necessary" services, but expressly excluded from coverage, *inter alia*, treatments or drugs which are "not medically necessary." The phrase "not medically necessary" included "experimental" treatments. A treatment is deemed experimental if it is (1) "not of proven benefit for the particular diagnosis or treatment of the covered person's condition" or (2) "not generally recognized by the medical community (as reflected in the published peer-reviewed medical literature) as effective or appropriate for the particular diagnosis of the covered person's particular condition."

Sometime in 1989 employees of Empire realized that Empire had no established policy with respect to whether it covered intravenous antibiotic therapy for the treatment of Lyme disease. That is, some physicians who reviewed claims for such

---

* During the pendency of this action, the appellant George Nijboer died. For the sake of convenience, the term "appellants" refers to, among others, George Nijboer and not his appointed representative.

treatment denied coverage as experimental, while others approved coverage. Several years later, when the volume of claims related to Lyme disease increased, Empire decided that this lack of established policy with respect to such claims was "a significant problem," and in 1992, it embarked on a plan to establish a medical policy governing the circumstances under which Empire would pay for intravenous antibiotic therapy for Lyme disease.

Empire instituted a policy, effective October 1, 1993, concerning its coverage of Lyme disease treatment. Essentially, this policy required treatment to be preauthorized and set forth specific standards to confirm the diagnosis of the disease. The policy also provided for two different treatments: acute (or early stage) Lyme disease was to be treated with oral antibiotics, while chronic (or late stage) Lyme disease was to be treated with intravenous antibiotics. Intravenous antibiotic treatment was limited to 28 days, but Empire would approve payment for extended treatment upon a proper showing of medical necessity.

Periodically, Empire revised its policy with respect to its coverage for Lyme disease treatment in response to the latest research studies on the disease. Particularly, in December 1995 Empire amended its policy by revising the circumstances under which it would pay for intravenous antibiotic therapy. In proper cases, such treatment was covered for up to 30 days. This new policy also expressly stated that "[t]here is no medical/scientific basis for prolonged courses of antibiotic therapy" exceeding 30 days. Yet it also outlined the circumstances under which Empire would pay for intravenous antibiotic therapy in excess of 30 days.

Empire revised its policy with respect to Lyme disease again in 1998. This revised policy recognized the necessity of treating some instances of early-stage and late-stage infection with intravenous antibiotics, but required documentation of objective evidence of certain Lyme disease manifestations. Preauthorization for such treatment was also required, and treatment was limited to 30 days.

At various times between 1993 and 1996, each of the appellants submitted claims to Empire for extended intravenous antibiotic treatment of Lyme disease. In some instances, Empire approved coverage of such treatment. Eventually, however, Empire refused to provide further coverage for each appellant.

Empire's denial of the appellants' claims led to the instant action. The amended complaint asserted a total of 30 causes of

action. Insofar as is relevant to the instant appeal, the appellants (1) sought a judgment declaring that they are entitled to have the treatment prescribed by their physicians approved by Empire, (2) alleged that Empire's refusal to authorize and pay for such treatment constituted a breach of contract, and (3) sought to recover damages on the ground that Empire had refused to authorize and pay for such treatment in bad faith. The appellants also asserted causes of action to recover damages for the intentional infliction of emotional distress and fraud, and sought punitive damages. In its amended answer, Empire denied the essential allegations of the complaint.

Following discovery, Empire moved for partial summary judgment dismissing: (1) all of the causes of action sounding in tort, (2) the demand for punitive damages, and (3) all causes of action asserted by the appellants Vicki Logan, Deborah A. Scheid, and Danny Licul on the ground that those causes of action were preempted by ERISA. By order entered May 4, 1999, the Supreme Court granted Empire's motion in its entirety with respect to all of the appellants except George Nijboer. Because George Nijboer died while Empire's motion was pending and a representative of his estate had not yet been appointed, the action had been stayed as to him. Subsequently, after the appointment of the administratrix of his estate, the Supreme Court, by order entered May 10, 1999, granted Empire's motion to dismiss the causes of action sounding in tort asserted on behalf of Nijboer as well as any demand on his behalf for punitive damages.

Initially, we note that the appellants do not seek review of those portions of the order entered May 4, 1999, which dismissed the complaint insofar as asserted on behalf of the appellant Deborah A. Scheid, or dismissed the causes of action to recover damages for the intentional infliction of emotional distress. Similarly, the appellants do not seek review of that portion of the order entered May 10, 1999, which dismissed Nijboer's cause of action to recover damages for the intentional infliction of emotional distress.

The appellants argue that the nature of Empire's contractual obligation to them and the public interest in seeing those obligations performed with reasonable care imposes a duty on Empire to perform the contract with reasonable care. Empire's breach of that duty gives rise to an independent tort actionable by the appellants. To support this claim, they assert that the "health insurance contracts at issue are so affected with the public interest" that Empire's failure to perform its

contractual obligations competently can have catastrophic consequences.

In *New York Univ. v Continental Ins. Co.* (87 NY2d 308, 316), the Court of Appeals stated as a general principle: "A tort obligation is a duty imposed by law to avoid causing injury to others. It is 'apart from and independent of promises made and therefore apart from the manifested intention of the parties' to a contract (Prosser and Keeton, Torts § 92, at 655 [5th ed]). Thus, defendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations. The very nature of a contractual obligation, and the public interest in seeing it performed with reasonable care, may give rise to a duty of reasonable care in performance of the contract obligations, and the breach of that independent duty will give rise to a tort claim (*see, Sommer v Federal Signal Corp.,* 79 NY2d 540). * * * [W]here a party engages in conduct outside the contract but intended to defeat the contract, its extraneous conduct may support an independent tort claim (*see, North Shore Bottling Co. v Schmidt & Sons,* 22 NY2d 171, 179; *Rich v New York Cent. & Hudson Riv. R. R. Co.,* 87 NY 382). Conversely, where a party is merely seeking to enforce its bargain, a tort claim will not lie (*see, Sommer v Federal Signal Corp.,* 79 NY2d, at 552, *supra; Bellevue S. Assocs. v HRH Constr. Corp.,* 78 NY2d 282, 293-295)."

The Court of Appeals stated: "In *Sommer* we held that a fire alarm company owed its customer a duty of reasonable care independent of its contractual obligations," and that the fire alarm company "could be held liable in tort for its gross failure to properly perform its contractual services" (*New York Univ. v Continental Ins. Co., supra,* at 317, citing *Sommer v Federal Signal Corp., supra*). The Court of Appeals recognized that the fire alarm company's duty to act with reasonable care "stem[med] from the nature of its services," i.e., that it performed "a service affected with a significant public interest; failure to perform the service carefully and competently can have catastrophic consequences" (*Sommer v Federal Signal Corp., supra,* at 552-553). Another important factor considered by the Court of Appeals was the manner in which the appellant's injuries arose and the resulting harm. Where they are "typical of tort claims," they support the existence of an independent duty (*Sommer v Federal Signal Corp., supra,* at 553).

In the instant case, the Supreme Court properly found that Empire did not owe the appellants a duty to perform its

contractual obligations with reasonable care. The respective contracts of insurance between Empire and the appellants did "not create a relationship for which a duty is owed to the plaintiff separate from the contractual obligation" (*Klein v Empire Blue Cross & Blue Shield,* 173 AD2d 1006, 1008; *see also, Korona v State Wide Ins. Co.,* 122 AD2d 120 [dismissing plaintiff's claim for emotional distress based on insurer's allegedly intentional and wrongful denial of plaintiff's claims for no-fault benefits, causing plaintiff to be denied necessary medical treatment and suffer serious physical and psychological injuries]).

We emphasize that the injury to the appellants because of Empire's allegedly improper denial of their claims was solely financial (*see, New York Univ. v Continental Ins. Co., supra,* at 317 ["governing the conduct of insurers and protecting the fiscal interests of insureds is simply not in the same league as the protection of the personal safety of citizens"]). The insurance policies at issue stated that they "provid[ed] protection against covered expenses resulting from an illness or injury." Thus, the appellants' injuries are not typical of those arising from tort. Moreover, the record demonstrates that the appellants are "essentially seeking enforcement of the bargain" (*Sommer v Federal Signal Corp., supra,* at 552) with Empire, i.e., that Empire should be compelled to pay for allegedly medically-necessary services prescribed by their treating physicians. Therefore, "the action should proceed under a contract theory" (*Sommer v Federal Signal Corp., supra,* at 552; *see, New York Univ. v Continental Ins. Co., supra,* at 316 ["where a party is merely seeking to enforce its bargain, a tort claim will not lie"]).

The appellants also contend that Empire is liable in tort because it engaged in conduct outside the contract intended to defeat the contract. Specifically, they claim that "[b]y redrafting the internal corporate medical policies, Empire has underhandedly raised the bar for those seeking coverage for expensive medical treatment."

The appellants' claim is without merit. The evidence established that Empire periodically amended and revised its policy with respect to the treatment of Lyme disease "in response to published, peer-reviewed studies." While such amendments and revisions of its policy may have resulted in stricter standards that made it more difficult for policyholders to establish that intravenous antibiotic therapy was "medically necessary" to treat Lyme disease, it cannot be concluded that

such conduct was intended to defeat the contract. To do so would essentially require Empire to ignore the latest research and findings within the medical community concerning what is appropriate treatment for a given medical condition. Taken to its extreme, this would lead to the absurd result that an insurer could be forced to cover treatment which is no longer considered medically effective, while at the same time denying coverage for treatment which has recently been proven to be effective in treating a given disease or medical condition.

In any event, to establish tort liability under this theory, a plaintiff must establish that the contract was "employed merely as a device in a broader scheme to defraud one of the parties," and "the plaintiff must plead and prove fraud, which constitutes 'a breach of duty distinct from, or in addition to, the breach of contract'" (*Metropolitan Life Ins. Co. v Noble Lowndes Intl.*, 192 AD2d 83, 88, *affd* 84 NY2d 430, quoting *North Shore Bottling Co. v Schmidt & Sons*, 22 NY2d 171, 179, *supra*). In the instant case, the Supreme Court properly dismissed the appellants' cause of action to recover damages for fraud as the complaint failed to properly plead that cause of action.

## Punitive Damages

■ The Supreme Court also properly dismissed the demands for punitive damages. In an action based on breach of contract, "punitive damages may be recoverable if necessary to vindicate a public right" (*New York Univ. v Continental Ins. Co., supra,* at 315, citing *Rocanova v Equitable Life Assur. Socy.*, 83 NY2d 603, 613). One of the necessary elements in such a case is that the "defendant's conduct must be actionable as an independent tort" (*New York Univ. v Continental Ins. Co., supra,* at 316; *Rocanova v Equitable Life Assur. Socy., supra*). Because we have already concluded that there is no basis for determining that Empire's conduct constitutes a tort independent of the contracts, the appellants' demand for punitive damages was properly dismissed (*see, New York Univ. v Continental Ins. Co., supra,* at 320).

## ERISA Preemption

■ As previously noted, Empire moved to dismiss the complaint insofar as asserted on behalf of the appellants Vicki Logan and Danny Licul on the ground that their claims were preempted by ERISA. Specifically, Empire claimed that preemption occurred because Logan and Licul were covered for

health insurance through group employee benefit plans or by individual policies which were converted from group employee benefit plans. The Supreme Court agreed and dismissed all of the causes of action asserted on behalf of those two appellants.

The Supreme Court properly dismissed Danny Licul's causes of action as preempted by ERISA. The evidence demonstrated that during the relevant times, he was insured through a group plan issued to Beechhurst Contracting Corp. (hereinafter referred to as Beechhurst), a company owned by his parents. Further, an employee of Beechhurst was insured by Empire under the same employee benefits plan, but under a different policy. Coverage of this employee was sufficient to bring the plan within the scope of ERISA (*see, Peterson v American Life & Health Ins.,* 48 F3d 404, *cert denied* 516 US 942; *Madonia v Blue Cross & Blue Shield,* 11 F3d 444, *cert denied* 511 US 1019; *Kennedy v Allied Mut. Ins. Co.,* 952 F2d 262).

However, we conclude that the Supreme Court improperly dismissed Logan's causes of action seeking a declaratory judgment and based on breach of contract as preempted by ERISA insofar as they relate to actions which occurred after April 1, 1995. We agree with the majority of Federal courts which have decided the issue and have determined that "[p]olicies derived from ERISA plans continue to be governed by ERISA even after conversion upon termination of employment" (*Varner v Cigna,* 182 F3d 930; *see, Painter v Golden Rule Ins. Co.,* 121 F3d 436, *cert denied* 523 US 1074; *White v Provident Life & Acc. Ins. Co.,* 114 F3d 26, *cert denied* 522 US 950; *Greany v Western Farm Bur. Life Ins. Co.,* 973 F2d 812; *Glass v United of Omaha Life Ins.Co.,* 33 F3d 1341). However, with respect to the periods after April 1, 1995, we conclude that Empire failed to establish, as a matter of law, that Logan's individual policy was converted from a group policy governed by ERISA (*see generally, Zuckerman v City of New York,* 49 NY2d 557). Because the only ground on which Empire sought dismissal of Logan's first and second causes of action, for a declaratory judgment and to recover damages for breach of contract, respectively, was that they are preempted by ERISA, the Supreme Court should not have dismissed those causes of action. However, for the reasons stated above, the Supreme Court properly dismissed her third and fifth causes of action, as well as her demand for punitive damages.

As a procedural matter we note that the notice of appeal herein states that all of the plaintiffs appeal from both the orders at issue. However, the appeals by the plaintiff Deborah

A. Scheid must be dismissed as abandoned. The appellants' brief failed to raise any issue regarding the Supreme Court's determination that Scheid's causes of action were preempted by ERISA. The appeal by Judith Nijboer, as administratrix of the estate of George Nijboer, from the order entered May 4, 1999, must be dismissed as she is not aggrieved by that order (*see*, CPLR 5511). Similarly, the appeals by the plaintiffs Vicki Logan, Virginia A. Philo, James Marino, and Danny Licul from the order entered May 10, 1999 must be dismissed as they are not aggrieved by that order which only dismissed causes of action asserted by George Nijboer.

Accordingly, the order entered May 4, 1999 is modified by deleting the provision thereof granting those branches of the defendant's motion which were for summary judgment dismissing the first and second causes of action in the complaint, for a declaratory judgment and to recover damages for breach of contract, respectively, and substituting therefor a provision denying those branches of the motion; as so modified, the order is affirmed insofar as appealed from. The order entered May 10, 1999 is affirmed insofar as appealed from.

SULLIVAN, J. P., S. MILLER and SCHMIDT, JJ., concur.

Ordered that the appeals by the plaintiff Deborah A. Scheid are dismissed as abandoned, without costs or disbursements; and it is further,

Ordered that the appeal by Judith Nijboer, as administratrix of the estate of George Nijboer, from the order entered May 4, 1999, is dismissed, without costs or disbursements, as she is not aggrieved thereby (*see*, CPLR 5511); and it is further,

Ordered that the appeals by Vicki Logan, Virginia A. Philo, James Marino, and Danny Licul from the order entered May 10, 1999 are dismissed, without costs or disbursements, as they are not aggrieved thereby (*see*, CPLR 5511); and it is further,

Ordered that the order entered May 4, 1999 is modified by deleting the provision thereof granting those branches of the defendant's motion which were for summary judgment dismissing the first and second causes of action in the complaint and substituting therefor a provision denying those branches of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements; and it is further,

Ordered that the order entered May 10, 1999 is affirmed insofar as appealed from, without costs or disbursements.