Barbara D. SCHERER, Plaintiff,

v.

THE EQUITABLE LIFE ASSURANCE
SOCIETY OF THE UNITED
STATES, Defendant.

No. 01 Civ. 10193(CSH).

United States District Court,
S.D. New York.

March 15, 2002.

Victor M. Serby, New York City, for Plaintiff.

*MEMORANDUM OPINION*
*AND ORDER*

HAIGHT, Senior District Judge.

## I. *BACKGROUND*

The amended complaint in this diversity action alleges that plaintiff is entitled to disability benefits that Equitable has improperly refused to pay. It is undisputed that under a Disability Income Insurance Policy Equitable issued to Scherer in 1987 (the "Policy"), Scherer is entitled to a monthly payment of $5,031 during such time as she is "totally disabled" within the meaning of the Policy. The Policy also excuses Scherer from paying premiums while she is disabled. Her premium payment is $1,415 twice yearly. The Policy contains a ninety-day "elimination period" after Scherer becomes totally disabled be-

fore she is entitled to payment of benefits or waiver of premiums. Scherer avers that she has been continuously totally disabled since January of 1995.

Equitable paid Scherer benefits under the Policy after she initially claimed she was totally disabled. In March of 1997, however, Equitable ceased payments and, in March of 1998, delivered to Scherer its final refusal to pay under the Policy. Following this refusal Scherer brought suit against Equitable for breach of contract in New York Supreme Court on April 15, 1998 (the "State Action"). That case went to trial before a jury which rendered a verdict against plaintiff on May 3, 2001. Plaintiff's appeal of that judgment is pending.

Scherer submitted a new claim of total disability under the Policy on August 31, 2001. In response, Equitable informed plaintiff that she owed $7,075.25 in unpaid premiums as of September 1999. On November 1, 2001, Equitable also informed plaintiff by letter that it would be adjudicating plaintiff's new claim "with a start date of May 3, 2001" but that it would cancel the policy if she did not pay the outstanding premiums by November 19, 2001. On November 17, 2001, plaintiff filed the instant suit seeking a declaratory judgment that the premiums are not due and that she was disabled from April 16, 1998 to November 19, 2001. Plaintiff filed an amended complaint as of right on December 27, 2001. The amended complaint seeks disability payments of $5,031 per month from April 16, 1998 to November 19, 2001, as well as an accelerated payment of future benefits under the Policy for the remaining period of her life expectancy. On the date she filed her complaint, plaintiff also brought an Order to Show Cause seeking a temporary restraining order ("TRO") and a preliminary injunction preventing defendant from canceling the Poli-

cy for non-payment of premiums pending an adjudication on the merits of this suit. The Court initially granted the TRO but by Memorandum Opinion and Order reported at 2001 WL 1568327 (S.D.N.Y. Dec.5, 2001), familiarity with which is assumed, denied plaintiff's request for a preliminary injunction because plaintiff could not demonstrate the requisite irreparable harm.

In its memorandum opposing plaintiff's request for injunctive relief defendant, *inter alia*, challenged this Court's subject matter jurisdiction. Defendant argued that plaintiff's claim cannot meet the $75,000 jurisdictional threshold imposed by 28 U.S.C. § 1332(a) because the most plaintiff can recover if she prevails is $10,062 in benefits, for the two months beginning ninety days after May 3, 2001, and the September 2001 premium payment of $1,415. After reviewing defendant's papers which revealed this basis for dismissal, the Court converted defendant's memorandum to a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction and set a briefing schedule. The motion is now fully submitted and, for the reasons set forth below, granted.

## II. *DISCUSSION*

When a question is raised about the validity of diversity jurisdiction, the proponent of jurisdiction, in this case the plaintiff, carries the burden of showing that "it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir.1994) (citation omitted). Unless it appears to a "legal certainty" that plaintiff's good faith claim is for less than the jurisdictional amount, dismissal is not warranted. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed.

845 (1938). "If the right of recovery is uncertain, the doubt should be resolved ... in favor of the subjective good faith of the plaintiff." *Tongkook,* 14 F.3d at 785–86 (internal quotations omitted). The amount in controversy is measured as of the date the complaint is filed. *See Chase Manhattan Bank, N.A. v. American National Bank and Trust Co. of Chicago,* 93 F.3d 1064, 1070 (2d Cir.1996).

The amended complaint in the present case alleges that Scherer is owed disability benefits of $5,031 per month from April 16, 1998 (the day after she filed the State Action) or, alternatively, July 12, 1998 (90 days after she instituted that suit) to November 17, 2001, the date she instituted the present lawsuit, for a total of more than $200,000. In addition, plaintiff contends that as a result of defendant's complete repudiation of the Policy, defendants must pay her a lump sum payment equal to monthly disability benefits for her life expectancy, an amount which plaintiff does not quantify. The amended complaint also requests an award of punitive damages resulting from defendant's alleged bad faith denial of plaintiff's claim and treble damages for defendant's alleged deceptive practices under New York State General Business Law § 349.

Defendant contends that the bulk of the damages plaintiff seeks are not attainable. As a preliminary matter, defendant argues that New York law prohibits an award of accelerated future benefits under an insurance contract except under special circumstances not shown here. Moreover, defendant maintains that plaintiff is barred from seeking disability benefits in this lawsuit from the period between April 16, 1998 and May 3, 2001 because the question of her entitlement to benefits during that period was already adjudicated by the jury in the State Action. As a result, by defendant's calculation, if plaintiff were to prevail on her claim the most she would be able to recover would be only a fraction of the $75,000 necessary to satisfy the requisite jurisdictional amount.

### A. Future Benefits

In New York,[1] a plaintiff who sues an insurer for failing to pay benefits under an insurance policy may recover only those benefits that have already accrued, not future benefits to which she may become entitled. *See Teig v. First Unum Insurance Co.,* 282 A.D.2d 669, 723 N.Y.S.2d 707 (2d Dep't 2001) ("Contrary to the plaintiff's contentions, he cannot recover a lump sum award for future benefits under his disability insurance policies."); *Gordon v. Continental Casualty Co.,* 91 A.D.2d 987, 457 N.Y.S.2d 844, 846 (2d Dep't 1983) ("[P]laintiff is not entitled to a lump-sum money judgment, nor to a declaration to that effect, with respect to defendant's future obligations arising under the contract although he may be entitled to a money judgment (or declaration) as to accrued installments."); *Berlly v. The United States Life Insurance Co.,* No. 00 Civ.1999, 2001 WL 40771, *2 (S.D.N.Y. Jan. 16, 2001) ("Turning to New York law, it is well-established that a plaintiff cannot recover anticipatory breach benefits under a disability insurance policy.").

A narrow exception to this rule arises if the plaintiff can show that the insurer has anticipatorily breached the insurance contract by completely repudiating it. As many New York courts have articulated, "[a]bsent special circumstances ... New York does not apply the doctrine

---

1. The parties assume that New York's substantive law governs this case. Because the Court has no reason to believe otherwise, New York law will be applied to decide this motion.

of anticipatory breach where there is an alleged repudiation of an executory contract for the payment of money only." *Romar v. Alli,* 120 A.D.2d 420, 501 N.Y.S.2d 877, 878 (1st Dep't 1986). However, "[a] plaintiff can recover a judgment regarding future benefits if, for example, the plaintiff is able to show that the insurer completely repudiated the contract." *Brauner v. Provident Life & Cas. Ins. Co.,* No. 97–Cv–3556, 1998 WL 812612, *2 (E.D.N.Y. March 24, 1998).

■ Courts applying New York law are in accord that the mere denial of benefits under an insurance contract is not tantamount to complete repudiation. *See, e.g., Brauner, id.; Wurm v. Commercial Ins. Co. of Newark, New Jersey,* 2001 WL 1263363 (Sup.Ct.N.Y.Co. Sept. 5, 2001). Something more than refusal of a claim by the insurer is necessary to demonstrate the extraordinary circumstances justifying payment of future benefits. As one New York court reasoned:

> A repudiation sufficient to support an action by the insured for an anticipatory breach cannot be inferred solely from the failure of the insurer to pay installment benefits claimed by the insured to be owed her when, during the period of such failure to pay, the insurer has continued to accept the insured's payment of premiums under the policy.

*Apostolou v. Mutual of Omaha Ins. Co.,* 72 A.D.2d 781, 421 N.Y.S.2d 600, 601 (2d Dep't 1979). Complete repudiation occurs not when the insurer "contest[s] the right to payments if it believes the disability does not exist" but when "it calls off the whole arrangement, cancels the policy and refuses future premiums". *Bell v. Mutual Benefit Health & Accident Assoc. of Omaha,* 19 Misc.2d 754, 192 N.Y.S.2d 854, 856 (Sup.Ct. Bronx Co.1959).

■ New York courts have made plain that an insurer's continued acceptance of premium payments is inconsistent with a complete repudiation of the contract. *See Apostolou, supra; MaGee v. Paul Revere Life Ins. Co.,* 954 F.Supp. 582, 586 (E.D.N.Y.1997) (plaintiff failed to state a claim for anticipatory breach because he alleged that he continued to pay premiums). Indeed, at least one court has held that evidence of continued acceptance of premiums by the insured actually "negates the assertion of a complete repudiation of the contract." *McCann v. John Hancock Mutual Life Ins. Co.,* 48 Misc.2d 325, 264 N.Y.S.2d 728, 731 (Sup.Ct. Kings Co.1964).

On the two occasions of which the Court is aware in which repudiation has been found by a court to have been properly alleged, the insurer engaged in conduct far more dismissive of the policy than routine denial of benefits. In one case, *Bell,* 192 N.Y.S.2d at 856, a representative of the insurer explicitly told the insured that it refused to pay any further benefits under the policy. In the other, *Wurm,* 2001 WL 1263363, the insurer informed the insured that she would never again be paid benefits and stopped sending her premium statements for a year until her lawyer contacted the insurance company to have the statements resumed.

■ In the case at hand, plaintiff has made no factual allegations resembling complete repudiation of the contract by defendant. The amended complaint avers in very general terms that Equitable never gave Scherer requested claim forms, refused to consider her claims for disability and would not accept Scherer's proof of loss. However, it indicates that those refusals were related to earlier claims by Scherer. Amended Complaint ("Am. Compl.") at ¶¶ 27–29. Scherer alleges that she filed her new claim on August 31, 2001 "when Equitable would again communicate with her," and that Equitable has informed

her that it would be "adjudicating [her] claim with a start date of May 3, 2001." Am. Comp. at ¶ 33. These allegations belie the suggestion that Equitable has refused to deal with her. Further undercutting plaintiff's claim of repudiation is the amended complaint's allegation that Equitable pointedly asked plaintiff to pay the premiums she had been withholding and stated that it would cancel the policy *only if* those premiums were not paid by a certain date. Thus, in contrast to *Wurm* and *Bell,* by the plaintiff's own averments Equitable is clearly willing to accept, indeed has demanded, the premiums due and evidently regards the disability policy as remaining in effect. Moreover, in further contrast to *Wurm* and *Bell,* in which the insurers threatened that the insureds would never again receive benefits, plaintiff alleges that defendant has actually informed her that it will adjudicate her newest claim.

Although plaintiff broadly alleges that defendant has repudiated the Policy, the specific factual allegations in the amended complaint reveal plaintiff's claim to be a simple dispute over plaintiff's entitlement to benefits. No actions on the part of Equitable that could be regarded as rising to the level of repudiation have been alleged. To the contrary, the allegations make plain that, while Equitable may have denied plaintiff benefits in the past (a decision, incidentally, endorsed by the State Action jury verdict), it has given no indication that it considers the policy null and void. Accordingly, the amended complaint fails to allege special circumstances entitling plaintiff to a lump sum payment of future benefits under the Policy.

### B. *Res Judicata*

Because future benefits are not recoverable, plaintiff's present claim is limited to the amount of benefits accrued to the date

she filed this case. Calculation of the amount in controversy, and hence this Court's subject matter jurisdiction, therefore depends on the amount of these benefits. We know that the end point of the calculation is the date plaintiff filed this case, November 17, 2001. The parties are at odds over when the benefits commenced accruing. Scherer filed the State Action on April 15, 1998 and the jury reached its verdict on May 3, 2001. The dispute centers upon whether her present claim for benefits encompasses the months between April 1998 and May 2001. The answer to that question turns on whether or not the State Action adjudicated her entitlement to benefits through the date of the verdict, as defendant contends, or only up to the date she filed the State Action, as plaintiff argues.

 This Court sitting in diversity must afford the same preclusive effect to judgments emanating from New York courts as those courts would give their own judgments. *Jacobson v. Fireman's Fund Ins. Co.,* 111 F.3d 261, 265 (2d Cir. 1997). Under New York law, *res judicata* bars a later suit arising out of the same "transaction" as an earlier one. *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981). Under this approach, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred even if based upon different theories or seeking a different remedy." *Id.* The doctrine applies to "issues which were or could have been raised in the prior proceeding." *Eagle Insurance Co. v. Facey,* 272 A.D.2d 399, 707 N.Y.S.2d 238, 239 (2d Dep't 2000).

The question this Court must resolve is whether plaintiff's entitlement to disability benefits between the filing of her complaint in April 1998 and the date of the jury's verdict in May 2001 was adjudicated

in the State Action. If so, Scherer is barred by principles of *res judicata* from seeking recovery of benefits for the same period in this lawsuit; and in that event, plaintiff cannot satisfy the jurisdictional amount.

Plaintiff argues that the Court should look only at the face of her state complaint to assess what was litigated in her prior case. The state complaint alleged that plaintiff was disabled as of the date of Equitable's termination of her benefits in March 1997 and that she continued to be disabled to the date of the complaint—April 15, 1998. Plaintiff's Memorandum of Law at Ex. A. In plaintiff's view, since her complaint sought damages only to and including the date it was filed, the judgment in the State Action does not preclude a claim for disability benefits after that date. This contention is inconsistent with settled *res judicata* principles. As noted, the doctrine of *res judicata* requires a court to determine whether issues were or could have been litigated in a previous case in which a judgment was issued. Plaintiff argues that she is the master of her complaint and that her claims cannot be changed or supplemented to add post-filing benefits without a formal amendment. However, determining what issues were actually litigated in a case that went to trial is not as facile as merely reviewing the allegations in the complaint. The Court must instead look at the entire record of the case, including the transcript of proceedings and the verdict form, along with the pleadings, in order to piece together the scope of the issues litigated. *See Garey v. Tobey,* 46 N.Y.S.2d 716 (Sup. Ct.N.Y.Co.1943) ("There is a sharp factual dispute between the affiants as to what issues were actually tried and submitted to the jury ... the satisfactory way to prove *res adjudicata* is to offer the pleadings, transcript of the record of the trial, includ-

ing the court's charge, findings and opinion if any, and judgment...."). This pragmatic approach is warranted because, as the New York Court of Appeals has recognized and any trial judge knows, "the actual trial may not have followed the pleadings and other issues may actually have been adjudicated than those which may be seen by reading the pleadings." *Bronxville Palmer, Ltd. v. State of New York,* 18 N.Y.2d 560, 564, 277 N.Y.S.2d 402, 223 N.E.2d 887 (1966). Considering that it is the judgment itself "which is the bar," the Court of Appeals has cautioned that:

> where the judgment and the pleadings do not conclusively show that what was adjudicated embraces the new litigation, it may be necessary to look beyond the judgment roll, at the testimony, the charge to the jury and the record of contentions made and determined.

*Id.* at 563, 277 N.Y.S.2d 402, 223 N.E.2d 887. The Court of Appeals' instructions in *Bronxville* defeat plaintiff's argument that the Court should ignore the trial proceedings in determining what was actually adjudicated in the State Action.

The single case cited by the plaintiff in support of her position that the Court should confine its *res judicata* analysis to a comparison of the four corners of the two complaints in fact stands for an altogether different proposition. *NBN Broadcasting, Inc. v. Sheridan Broadcasting Networks, Inc.,* 105 F.3d 72 (2d Cir.1997), involved a claim for breach of a partnership agreement. The plaintiff had previously filed a claim in state court for breach of the same partnership agreement based on different conduct. In the earlier case, the defendant moved for summary judgment and the plaintiff cross-moved for a voluntary discontinuance. The state court granted the motion for discontinuance and dismissed the claim with prejudice. Reversing the district court, the Second Circuit

held that the subsequent federal claim was not barred by *res judicata* because it was based on conduct that had not occurred until after the motions were *sub judice* and only one day before the state court ruled on them. Because that particular claim could not have been brought at the time plaintiff filed its first suit, *res judicata* did not apply. Specifically, the court held that:

> Since a plaintiff has no obligation to expand its suit in order to add a claim that it could not have asserted at the time suit was commenced, a later suit based on the subsequent conduct is not barred by *res judicata.* The *res judicata* effect of the State Court judgment, however, is limited to those claims that had arisen at the time that plaintiff brought the State Court Action.

*Id.* at 78–79 (citations omitted).

Despite the broader meaning which plaintiff seeks to impart to *NBN's* holding, the facts of that case make perfectly evident that it speaks only to that aspect of the doctrine of *res judicata* that involves claims that *could have been* brought, not those that were *actually litigated.* Plain-

tiff may be the master of her complaint but as the New York Court of Appeals has observed, the complaint alone does not define the scope of issues actually litigated at trial. Accordingly, it is appropriate for this Court to review the transcript of the proceedings to determine the issues that were actually litigated in the State Action.

▮▮▮ The parties have submitted documents that are part of the state court record in support of their respective positions regarding whether or not the jury decided the plaintiff's entitlement to disability benefits up to and including the date of the verdict. Plaintiff offers the "Judgment Roll" which comprises the Complaint, the Judgment, the Verdict Sheets and several notes from the jury during deliberations, all in an effort to demonstrate that the lawsuit claimed benefits only up to the date of the filing—April 15, 1998. For defendant's part, to demonstrate that the lawsuit adjudicated plaintiff's entitlement to benefits through the date of the jury verdict, May 3, 2001, it has submitted the trial transcript, portions of which show that plaintiff and several witnesses testified about whether or not plaintiff was disabled in 2000 and 2001.[2]

**2.** Despite the submission of extra-pleading documents, I need not convert this motion into a motion for summary judgment under Rule 56(c). There are two reasons for this conclusion. First, I am permitted to take judicial notice of documents that are part of the record in the State Action. *See 9281 Shore Road Owners Corp. v. Seminole Realty Co.,* 214 B.R. 676 (Bankr.E.D.N.Y.1997) (holding that in determining motion to dismiss on basis of *res judicata* the court could "take judicial notice of all of the documents which are part of the record before it, *as well as the documents contained in the record before the State Court,* without having to convert the motion to one for summary judgment.") (emphasis added); *Lipin v. American National Red Cross,* No. 93 Civ. 1334, 1996 WL 18901, *8 (S.D.N.Y. Jan. 17, 1996) (refusing to convert 12(b)(6) motion to dismiss on *res judicata* grounds into summary judgment motion de-

spite consideration of records in prior judicial proceedings), *aff'd* 113 F.3d 1229, 1997 WL 279912 (2d Cir.1997) (unpublished decision); *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991) (recognizing that "courts routinely take judicial notice of documents filed in other courts").

Second, under Rule 12(b)(1), under which this motion is properly brought, I am authorized in determining the existence of subject matter jurisdiction to consider material outside the complaint without converting it into a summary judgment motion. *Ensign–Bickford Co. v. ICI Explosives USA Inc.,* 817 F.Supp. 1018, 1023 (D.Conn.1993) ("The consideration of materials outside the complaint on a motion to dismiss pursuant to Rule 12(b)(1) does *not* convert the motion to one for summary judgment pursuant to Rule 56.") (citation omitted) (emphasis in original).

The transcript and verdict sheet reveal that plaintiff's entitlement to disability benefits well after 1998 was very much at issue during the trial. At trial, Scherer did not limit the testimony about her disability to the period before April 1998. Instead, she answered "Yes" when asked whether she had been continuously totally disabled since 1995, and whether she had been unable to perform her occupational duties from 1995 and "continue[d] to be so unable today". Tr at. 2 She also described on several occasions the state of her mental and physical health at the time of trial. Tr. at 4–5, 7–10. Moreover, Scherer did not seek to limit the testimony of her medical witnesses to the period before April 1998. Quite the contrary, her medical treatment and symptomology up to the time of trial was the subject of testimony by her medical witnesses, Dr. Josephs and Dr. Schecter. Dr. Josephs described the worsening of plaintiff's symptoms from 1997 through 2001. For example, he testified that he reviewed an MRI taken of the plaintiff in March of 2001 and compared it to what he saw in plaintiff's 1997 MRI. Tr. at 116–119. He also described the then-present state of plaintiff's physical health. Tr. at 157. Similarly, Dr. Schechter discussed an MRI taken of plaintiff in April of 2000 and likewise testified that it showed her symptoms were getting worse. Tr. at 267–268. This testimony clearly demonstrates that, despite the complaint's time frame, plaintiff did not temporally delimit consideration of her physical condition at trial. Instead, her testimony and that of her doctors described her symptoms and ability to work as late as 2001.

A review of the verdict sheet is also informative of the scope of the issues presented to the jury. That document discloses that the jurors were asked to answer the following question on liability: "2(a): Was Barbara Scherer unable, due to injury or sickness, to engage in the substantial and material duties of her regular occupation for any period of time subsequent to March 13, 1997?" The jury's verdict on that question was "No." Viewed against the backdrop of testimony concerning plaintiff's symptoms and treatment in the years after 1998, the question's omission of an end date provides strong evidence that the jury was required to consider her disability status after April 1998. To counter this evidence, plaintiff points to no evidence other than the complaint itself to show that the jury adjudicated her claim only up to April 1998.

Having considered the relevant evidence, I conclude that the verdict sheet and the testimony demonstrate that plaintiff's entitlement to disability benefits in the period between April 1998 and May 2001 was adjudicated by the jury. Apart from being amply supported by the record, this is the only logical conclusion because if it were otherwise the trial judge would presumably have excluded as irrelevant all of the testimony about plaintiff's post–1998 condition and treatment.

Accordingly, plaintiff's claim for disability benefits for the period between March 1997 and May of 2001 was previously determined in the State Action and may not be relitigated. Because the amount in controversy is measured as of the date the federal complaint is filed, plaintiff's claim here is limited to the amount of disability benefits accrued and premium payments paid between May 3, 2001 and November 17, 2001. Depending on whether the 90–day elimination period applies (a subject on which I take no position), at the time she filed this complaint plaintiff would have been entitled to between two and five months' worth of benefits totaling between $10,000 and $25,000 and one premium payment of $1415. Under either calculation,

plaintiff's claim is well under the $75,000 statutory threshold.[3]

### C. *Additional Claims*

#### 1. *Punitive Damages*

 The amended complaint requests an award of punitive damages "for bad faith non-payment" of Scherer's insurance claim. In her motion papers, however, plaintiff does not argue that a possible award of punitive damages should be included in the amount in controversy calculation. Nor does plaintiff respond to defendant's argument that punitive damages are unavailable here. Given those omissions, it is reasonable to conclude that plaintiff no longer presses her punitive damages claim. However, even assuming that she continues to pursue that category of damages, I conclude that her punitive damages claim does not help her overcome the jurisdictional hurdle because it is not viable. Settled New York law holds that punitive damages are not recoverable in claims for the bad faith denial of an insurance claim. *See Logan v. Empire Blue Cross and Blue Shield*, 275 A.D.2d 187, 714 N.Y.S.2d 119, 123, 125 (2d Dep't 2000) (dismissing punitive damages against insurer for denying claims in bad faith; insured had no independent tort claim against insurer for failing to perform its contractual obligations with reasonable care, therefore plaintiff merely stated breach of contract claim); *American National Fire Ins. Co. v. Mirasco, Inc.*, 143 F.Supp.2d 372, 377 (S.D.N.Y.2001) ("New York law does not provide a cause of action for bad faith denials of insurance claims."); *cf. New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 315,

639 N.Y.S.2d 283, 662 N.E.2d 763 (in action based on breach of contract punitive damages are recoverable only if "necessary to vindicate a public right" and if defendant's conduct is "actionable as an independent tort"). In the case at bar, Scherer has not proffered any facts that show that in assessing this claim Equitable engaged in independent tortious conduct that would make available punitive damages in what is essentially a breach of contract action.

#### 2. *Deceptive Practices*

 The amended complaint also asserts a claim that Equitable engaged in deceptive practices within the meaning of New York State's General Business Law § 349, and seeks treble damages of an unspecified amount. Curiously, neither plaintiff nor defendant addresses this claim in their papers. Since plaintiff does not assign a dollar amount to the claim or even argue that it brings the amount in controversy over $75,000, plaintiff has not met her burden of demonstrating that this claim brings her damages in excess of the jurisdictional amount. In any event, it is doubtful that plaintiff could sustain such a claim based on the allegations in the amended complaint. That follows from the fact that a claim that an insurer has refused to pay benefits to an individual insured is not cognizable as a § 349 deceptive practices claim. "[I]n order to satisfy General Business Law § 349, plaintiffs' claims must be predicated on a deceptive act or practice that is 'consumer oriented'." *Gaidon v. Guardian Life Ins. Co. of America*, 94 N.Y.2d 330, 344, 704 N.Y.S.2d 177, 182, 725 N.E.2d 598 (1999) (citation omitted). A "private contract dispute as to

---

**3.** Although the parties do not raise the issue, I note that this conclusion remains valid even if plaintiff's claim is measured as of the date she filed the *amended* complaint on December 27, 2001. Calculating the amount in controversy as of the later date would add one month of accrued benefits to plaintiff's claim. The addition of $5,000 or even $10,000 does not raise plaintiff's claim above the jurisdictional threshold.

policy coverage" is not actionable under § 349. *Id.; see also Korn v. First UNUM Life Ins. Co.*, 277 A.D.2d 355, 717 N.Y.S.2d 606 (2d Dep't 2000) ("Since the complaint essentially alleges a private contract dispute over policy coverage that is unique to the parties, rather than conduct that affects consumers at large, the complaint fails to state a cause of action pursuant to General Business Law § 349."). Scherer has alleged no conduct on the part of Equitable which brings this claim into the legitimate purview of that statute.

### III. CONCLUSION

As explained above, based on the amended complaint's factual allegations plaintiff is not entitled to an award of future benefits under the disability policy at issue. Nor is she entitled to an award of punitive damages, or treble damages under General Business Law § 349. Moreover, defendant has demonstrated that plaintiff's claim for benefits in this case for the period between April 1998 and May 2001 is barred by the principles of *res judicata.* As a result, plaintiff's monetary claim as of the date the complaint was filed is far below the statutory jurisdictional threshold of $75,000 for diversity cases. Accordingly, defendant's motion to dismiss the amended complaint for lack of subject matter jurisdiction is granted.

Since the dismissal results from a lack of subject matter jurisdiction in this Court, the dismissal is without prejudice to the underlying merits.

The Clerk of the Court is directed to dismiss the amended complaint in its entirety.

IT IS SO ORDERED.