Eric RUBIN–SCHNEIDERMAN,
Plaintiff,

v.

MERIT BEHAVIORAL CARE CORPO-
RATION, Sati Ahluwalia, M.D., and
Empire Blue Cross and Blue Shield,
Defendants.

No. 00 Civ. 8101(JSM).

United States District Court,
S.D. New York.

April 10, 2001.

Whitney North Seymour, Jr., Landy &
Seymour, New York, NY, for plaintiff.

Jonathan Cooperman, Kelley Drye &
Warren LLP, New York, NY, Daly D.E.
Temchine, Epstein Becker & Green, P.C.,
Washington, D.C., for defendants.

### OPINION and ORDER

MARTIN, District Judge.

Eric Rubin–Schneiderman ("Plaintiff")
originally filed this action against Merit
Behavioral Care Corp. ("Merit"), Sati Ah-
luwalia, M.D. ("Dr.Ahluwalia"), and Em-
pire Blue Cross and Blue Shield ("Empire
Blue Cross") (collectively "Defendants") in
New York Supreme Court. Defendants
removed the case pursuant to 28 U.S.C.
§ 1441 on the grounds that Plaintiff's
claims are completely preempted under
the Employee Retirement Income Security
Act ("ERISA"), 29 U.S.C. § 1144(a).
Plaintiff now moves to remand the case to
state court. For the reasons set forth
below, Plaintiff's motion is denied.

## I. BACKGROUND

Plaintiff's complaint and accompanying affidavits set forth the following facts. Plaintiff's parents own a company called Barson Hardware Co., Inc. ("Barson"). During the relevant time period, Barson maintained a group health plan with Empire Blue Cross known as the Empire BlueChoice Preferred Provider Organization ("BlueChoice PPO"), which was an ERISA-governed plan. (Schneiderman Decl. Ex. A.) Plaintiff was insured under the plan as a dependent of his parents until he no longer qualified for coverage at age nineteen. In February 1997, Plaintiff's father submitted an application to Empire Blue Cross to continue Plaintiff's coverage as an individual. (Schneiderman Decl. Ex. B.)

The BlueChoice PPO allows members to obtain medical care from in-network or out-of-network doctors, and the reimbursement benefits differ accordingly. Some medical services require pre-approval by a utilization review agent before the patient obtains care, whether care is sought from an in-network or out-of-network doctor. Empire Blue Cross employed Merit to provide these utilization review services. Mental health services was one category of treatment that required pre-approval.

Plaintiff suffers from various psychiatric disorders. In August 1997, Plaintiff's treating physician recommended that Plaintiff be placed in an in-patient treatment facility known as Four Winds Hospital. Plaintiff's father contacted Merit and was told that Plaintiff would have to undergo a pre-admission psychiatric evaluation to determine whether admission to Four Winds would be covered by his policy. Although the evaluating physician at Four Winds recommended admission, Merit denied coverage. In a letter dated September 9, 1997, Dr. Ahluwalia, an employee of Merit, stated that "[b]ased on the information that we received and national professional criteria for medical necessity, [Merit] cannot authorize inpatient psychiatric treatment at Four Winds Hospital" because the "current level of symptoms can be treated at a lower level of care." (Pl.'s Mem. Supp. Remand, Ex. A.) Dr. Ahluwalia instead recommended intensive outpatient treatment. Seven months later, on April 6, 1998, Plaintiff attempted suicide at his parents' residence. He was subsequently transferred to Four Winds Hospital.

Plaintiff brought this action against Empire Blue Cross, Merit, and Dr. Ahluwalia based on Merit's refusal to authorize coverage for in-patient care for Plaintiff's psychiatric illness. Plaintiff claims that Merit and Dr. Ahluwalia were negligent in refusing coverage, and that Empire Blue Cross is vicariously liable for their acts. Plaintiff also charges both Merit and Empire Blue Cross with negligent hiring, training, and supervision. Following Defendants' removal, Plaintiff brought this motion to remand on the basis that (1) his policy is not governed by ERISA and (2) his state law claims are not subject to complete preemption.

## II. DISCUSSION

### A. ERISA Plan

The BlueChoice policy provided that upon a disqualifying event, a group member could either convert the policy to an "individual contract" or temporarily continue coverage as a "continued coverage beneficiary." (Schneiderman Decl. Ex. A at 35–39.) If one elected to continue coverage, the Policy provided for coverage in accordance with COBRA legislation or under New York State law, whichever applied. Plaintiff was not eligible for continuation under COBRA because his father's employer had fewer than twenty employ-

ees on a typical business day during the previous year. (Schneiderman Decl. ¶ 5.) Plaintiff's ability to extend his coverage therefore fell under state law. Under N.Y. Ins. Law § 4305, a disqualified individual can either continue coverage under the "group contract's terms and conditions" for thirty-six months in Plaintiff's case, *see id.* § 4305(e)(4)(C), or convert to an individual direct payment contract, *see id.* § 4305(d). Plaintiff elected to continue coverage under the group contract. (Schneiderman Decl. Ex. B.)

■ In order for ERISA to govern the terms of an insurance policy, the policy must be sufficiently connected to an ERISA-governed plan. Plaintiff argues that the continuation of his policy as an individual essentially severed his plan from his parents' ERISA plan because the continuation was not a plan benefit, but a creature of state law.

By the terms of Section 4305 and of the policy, continuation coverage extends a group member's coverage for a limited time when membership in the group ends. The plain language of the statute and the policy thus suggest that the continuation coverage falls under the original plan. In the context of continuation under COBRA, courts have held that a policy continuation remains part of the original ERISA plan.[1] *See, e.g., Demars v. CIGNA Corp.,* 173 F.3d 443, 447 (1st Cir.1999); *Mimbs v. Commercial Life Ins. Co.,* 818 F.Supp.

1556, 1560–61 (S.D.Ga. 1993). Courts reason that the ability to continue coverage arises as the result of enrollment in an ERISA plan, that the terms of the continuation policy are identical to those of the group contract, and that the employer has continuing obligations in administering the policy. *See Demars,* 173 F.3d at 447; *Mimbs,* 818 F.Supp. at 1561. This reasoning is no less applicable in Plaintiff's case, where the statute governing the right to continue coverage arises under state law, rather than under COBRA. In particular, Section 4305(e) explicitly provides that premium payments are to be made directly to the employer.[2]

Therefore, Plaintiff's continuation of his coverage as an individual in 1997 did not sever his policy from his parents' ERISA plan, and his policy remains subject to ERISA's provisions.

### B. ERISA Preemption

■ An ERISA plan beneficiary must proceed under ERISA's civil enforcement provision in order to "recover benefits due to him" or to "enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). These types of claims are completely preempted by federal law and overcome the well-pleaded complaint rule. *See Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269, 272 (2d Cir.1994).

In attempting to define the scope of claims subject to complete preemption,

---

**1.** Plaintiff urges the Court to follow the reasoning of a minority of courts that have held that *conversion* to an individual policy severs the policy from the ERISA plan. *See Demars v. CIGNA Corp.,* 173 F.3d 443, 447 (1st Cir. 1999); *Mimbs v. Commercial Life Ins. Co.,* 818 F.Supp. 1556, 1560–61 (S.D.Ga. 1993). However, not only do a majority of courts hold that a conversion policy remains part of the original ERISA plan, *see, e.g., Painter v. Golden Rule Ins. Co.,* 121 F.3d 436, 439–40 (8th Cir.1997); *White v. Provident Life & Accident Ins. Co.,* 114 F.3d 26, 27–28 (4th Cir.

1997); *Logan v. Empire Blue Cross & Blue Shield,* 275 A.D.2d 187, 714 N.Y.S.2d 119, 125 (2000), but even Plaintiff's cases state that a plan *continuation* remains part of the ERISA plan.

**2.** Moreover, Plaintiff does not claim a violation of his right to continue coverage under state law, but rather the wrongful denial of a benefit under the plan. *See Greany v. Western Farm Bureau Life Ins. Co.,* 973 F.2d 812, 817–818 (9th Cir.1992).

courts have drawn a distinction between claims that relate to plan administration, which are completely preempted, and claims for medical malpractice, which remain governed by state law. *See, e.g., Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 52–56, 107 S.Ct. 1549, 1555–58, 95 L.Ed.2d 39 (1987); *Pryzbowski v. U.S. Healthcare, Inc.,* 245 F.3d 266, 272 (3d Cir. 2001); *Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 356–57 (3d Cir.1995). Courts reason that malpractice claims involve individual cases of negligence for which ERISA provides no standards of review, and in which lack of uniformity does not subvert Congress's purpose in regulating employer insurance plans. *See Dukes,* 57 F.3d at 357. Seizing on this distinction, Plaintiff argues that his claims are properly construed as claims for negligence in providing medical treatment, not claims to recover a benefit under the plan, and therefore they are not subject to complete preemption.

Prospective utilization review ("UR") is a cost-containment mechanism commonly used by medical insurance providers. *See Pegram v. Herdrich,* 530 U.S. 211, 120 S.Ct. 2143, 2148–49, 147 L.Ed.2d 164 (2000). Merit's job in performing UR for Empire Blue Cross was to determine whether Plaintiff's requested mental health treatment would be covered by Plaintiff's policy. Merit stated in its letter denying coverage that it reached its decision based on "national professional criteria for medical necessity," and it recommended intensive outpatient treatment. The letter also noted that ultimate medical decisions were Plaintiff's responsibility. Merit's doctors did not examine Plaintiff, nor did they prescribe treatment.

Defendants argue that Merit's role was confined to deciding whether benefits would be extended or denied, and that nothing prevented Plaintiff from entering in-patient care at his own expense. Plain-

tiff argues that by concluding that in-patient treatment was not medically necessary, Merit exercised medical judgment and essentially dictated the course of Plaintiff's treatment. Plaintiff reasons that his negligence claims do not involve enforcement of plan benefits *per se,* but rather relate to the quality of medical care he received.

Courts have rejected claims such as Plaintiff's on numerous occasions, concluding that decisions by UR agents to disapprove requested treatment relate to administration of plan benefits, not to provision of medical care. As such, claims for negligence in improperly failing to approve treatment more closely resemble claims for denial of a plan benefit than for medical malpractice. *See, e.g., Hull v. Fallon,* 188 F.3d 939, 942–43 (8th Cir.1999), *cert. denied,* 528 U.S. 1189, 120 S.Ct. 1242, 146 L.Ed.2d 101 (2000); *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1488–90 (7th Cir.1996); *Dukes,* 57 F.3d at 360–61; *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 942 (6th Cir. 1995); *Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321, 1331–32 (5th Cir. 1992); *Brandon v. Aetna Servs., Inc.,* 46 F.Supp.2d 110, 113–14 (D.Conn.1999).

Plaintiff seeks to overcome the weight of this authority by extending the reasoning of the Supreme Court's recent decision in *Pegram v. Herdrich,* 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). In *Pegram,* the Court held that mixed eligibility / treatment decisions by HMOs and their physicians are not fiduciary decisions giving rise to a claim under ERISA. Although the issue of preemption was not before it, the Court expressed the concern that allowing preemption of claims relating to determinations about medical necessity would necessarily federalize malpractice litigation. *See id.* at 2157–58. In identifying mixed eligibility decisions, the Court

noted that a simple determination that appendicitis is not covered by the plan (where there is no dispute that the patient has appendicitis) is a pure eligibility decision, while a decision about what type of treatment the plan will cover constitutes a mixed decision (involving determinations of "medical necessity"). *See id.* at 2154. Plaintiff argues that the existence of a mixed decision is now central to the preemption analysis, *see Pappas v. Asbel,* No. 98 E.D. Appeal Dkt.1996, 2001 WL 327888, at *6 (Pa. Apr. 3, 2001) (extending *Pegram's* reasoning to find no preemption of HMO's mixed eligibility decision), and that Merit made just such a decision when it refused to authorize Plaintiff's in-patient treatment.

Plaintiff also points to a recent line of cases in the Third Circuit in which increasingly subtle distinctions have been made between quality-of-care claims and pure benefit claims. Under this line of reasoning, a Plaintiff can plead around ERISA preemption by alleging that an HMO's UR agent negligently refused authorization for treatment, and that this refusal amounted to a failure to provide adequate medical care rather than the withholding of a specific plan benefit. *See, e.g., Lazorko v. Pennsylvania Hosp.,* 237 F.3d 242, 249–50 (3d Cir.2000) (failure to authorize hospitalization); *In re U.S. Healthcare, Inc.,* 193 F.3d 151, 164 (3d Cir.1999), *cert. denied,* 530 U.S. 1242, 120 S.Ct. 2687, 147 L.Ed.2d 960 (2000) (failure to send in-home nurse); *Berger v. Livengrin Foundation,* No. Civ.A. 00–CV–501, 2000 WL 325957, at *3 (E.D.Pa. Mar. 27, 2000) (refusal to authorize in-patient treatment for alcoholism). The theory behind these cases is that by implementing policies or making coverage decisions as part of a cost-containment plan, HMOs and their doctors lower the standard of care provided to patients.

The problem with Plaintiff's argument is that both *Pegram* and the Third Circuit line of cases involved UR determinations by an HMO's doctors or administrators, not by independent UR agents for a more traditional fee-for-service plan. An HMO, as a managed care entity, takes on the role of medical provider *and* plan administrator. *See Pegram,* 120 S.Ct. at 2149. One of the "benefits" that HMOs provide is the doctors who render the medical services. Thus, claims of malpractice against HMOs arising from denial of authorization for treatment readily implicate the quality of care received by the patient, and courts rely on the fact that the HMO was acting as "medical provider" rather than "administrator" in finding that negligence claims are not completely preempted. *See, e.g., Pryzbowski,* 245 F.3d at 274.

Although Plaintiff's policy features aspects of an HMO, it was not a managed care contract. Rather, the BlueChoice PPO gives patients the ability to choose how to manage their own care by offering different reimbursement schemes depending on whether the patient sees an in-network or out-of-network doctor. A patient has an incentive to see a preferred provider because his out-of-pocket expenses will be less.

Unlike an HMO, Empire Blue Cross never sought to undertake responsibility for Plaintiff's treatment. In providing UR services, Merit's role was confined to informing a patient *before* receiving treatment whether that treatment would be covered under the plan. Merit's doctors were not Plaintiff's treating physicians, nor did Merit purport to provide Plaintiff with medical services. Thus, the UR determination involved plan administration, not provision of medical services. *See Dukes,* 57 F.3d at 360–61. As such, *Pegram's* suggestion that an HMO's negligent mixed

eligibility decision may not be completely preempted is inapposite.

It should also be noted that the Third Circuit recently distinguished its quality-of-care cases in holding that a plaintiff's claim that her HMO delayed approving treatment by an out-of-network doctor was preempted. *See Pryzbowski,* at 272. The *Pryzbowski* court reaffirmed the principle that determinations of whether requested treatment is covered under a policy relate to plan administration, and noted that because ERISA provided a remedy for this type of complaint, Congress intended that such claims be preempted. *Id.* at 274. Similarly, nothing prevented Plaintiff here from entering in-patient treatment and then suing Defendants pursuant to ERISA's civil enforcement provision to either force approval for the treatment or recover his costs. *See* 29 U.S.C. §§ 1132(a)(1)(B), (a)(3).

Finally, Plaintiff makes the half-hearted argument that his negligence claims are preserved under ERISA's savings clause. Under this clause, state laws that "regulate insurance" are exempted from preemption. *See id.* § 1144(b)(2)(A). Plaintiff bases his state law claims on the breach of duties implied by New York's statute regulating UR agents. That statute features extensive reporting requirements and program standards for UR agents, and provides for a right of appeal from a determination that a requested treatment is not medically necessary, first to the UR agent and subsequently to an external agent. *See* N.Y. Ins. Law §§ 4904, 4910–14. In a similar case, the Fifth Circuit held that a Texas statute providing for independent review of UR decisions was not saved because it constituted an alternative remedy for the recov-

ery of a benefit. *See Corporate Health Ins., Inc. v. Texas Dep't of Ins.,* 215 F.3d 526, 537–39 (5th Cir.2000), *rehearing en banc denied by* 220 F.3d 641 (5th Cir. 2000). *See generally Pilot Life,* 481 U.S. at 52–54, 107 S.Ct. at 1555–56. Plaintiff makes no argument why New York's statute should be viewed differently, even assuming that it creates some private right of action beyond the appeals process,[3] and therefore his negligence claims are not saved.

Accordingly, Plaintiff's claims for negligent refusal to authorize treatment are completely preempted under ERISA. The Court has supplemental jurisdiction over Plaintiff's negligent hiring and supervision claims. *See Lupo,* 28 F.3d at 272.

### C.  CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is denied.

**SO ORDERED.**

---

**3.** Plaintiff does not allege that Defendants violated the regulation portions of the statute, but rather he seeks to create an implied right of action for breach of a duty of reasonable care.