Carol **WALDSCHMIDT,** in her own right and as Administratrix of the Estate of Robert Waldschmidt, deceased, Plaintiff,

v.

**AETNA U.S. HEALTHCARE; St. John's Lutheran Care Center; Allegheny General Hospital West Penn Allegheny Health System, Antonios Zikos; Ravikumar Alagar and Evelyn Berwick, Defendants.**

No. 02C827.

United States District Court,
W.D. Pennsylvania.

Aug. 14, 2002.

---

Daniel M. Berger, Berger & Lagnese, Pittsburgh, PA, for plaintiff.

Scott D. Livingston, Marcus & Shapira, Deborah D. Olszewski, Olszewski & Quinlin, James A. Wood, Christopher K. McNally, Israel, Wood & Puntil, Pittsburgh, PA, for defendants.

## OPINION and ORDER OF COURT

AMBROSE, District Judge.

### SYNOPSIS

Pending is Plaintiff's Motion to Remand (Docket No. 9) an action which had been removed to this Court on the basis of complete preemption under ERISA. Plaintiff contends that her husband's death is attributed to his health care provider's decision to place him in a substandard nursing facility. insisting that her claim

focuses upon the quality of medical care received, rather than the quantity of benefits received, Plaintiff reasons that it is not completely preempted. I disagree. Plaintiff's claim is, at essence, one that her husband should have been placed at an "out-of-network" facility, rather than the "in-network" facility. This is a claim of eligibility for benefits and is completely preempted by ERISA. Remand of this claim is inappropriate. Nevertheless, because the remaining claims fall within my supplemental jurisdiction, and because they substantially predominate over the claim against Aetna, these remaining claims are remanded.

## *OPINION*

Robert Waldschmidt, a UPS employee, was severely injured in a traffic accident. After a prolonged stay in several hospitals, the decision was made to transfer him to a nursing facility. Carol Waldschmidt ("Waldschmidt"), his wife, insists that Defendant Aetna Life Insurance Company ("Aetna") made a medical decision to transfer her husband to St. John's Lutheran Care Center ("St.John's")—a facility which she contends was inadequately equipped to meet his needs. Waldschmidt claims that she asked Aetna to transfer her husband to a more highly skilled facility instead.

While at St. John's, Robert Waldschmidt suffered a cardiac and/or pulmonary arrest. Waldschmidt contends that he was not properly nor timely resuscitated, and that he suffered severe brain damage and other injuries as a consequence. He was then transferred back to Allegheny General Hospital, where he died a few months later. Waldschmidt attributes his death to the injuries sustained while at St. John's.

Waldschmidt has sued nearly everyone associated with her husband's care. She filed suit in the Court of Common Pleas of Allegheny County, Pennsylvania. Aetna thereafter removed the action to this Court, insisting that Waldschmidt's claims are completely preempted by ERISA, because they relate to the administration of benefits under a health plan. Waldschmidt disagrees. She contends that her claims address the quality of medical care received, and as such, are not completely preempted. Consequently, she filed the pending Motion to Remand (Docket No. 9). Only one other defendant, Ravi K. Algar, M.D., has weighed in on this issue. Algar supports Waldschmidt's contention that the claims involve the quality of medical care received and are not completely preempted.

This is a difficult case—especially given its posture. I am without the benefit of a thoroughly developed factual history.[1] Nevertheless, after careful consideration of the allegations set forth in the Complaint, and the plan documents, I reject Waldschmidt's characterization of her claim. Because the dispute involves the eligibility for benefits, the claim is completely preempted under ERISA and remand is inappropriate.

## *ANALYSIS*

■ ERISA provides for two types of preemption—"complete preemption" under

---

**1.** *See Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 356 (3d Cir.1995) (stating that, in making a decision regarding preemption, "...it would be helpful to have a complete understanding in each case of the relationships among the HMO, the employer, and the other defendants, the nature of the plan benefits, and the rights of participants and beneficiaries under the plan. We are somewhat hampered here because these cases come to us on appeal from orders granting motions to dismiss. Because of this procedural status, the parties have had little chance to develop the records and, accordingly, we know very little about the nature of the plan benefits or about the role-if any– that U.S. Healthcare's HMOs play in the respective welfare plans.")

§ 502(a) and "express preemption" under § 514(a). *See Quarles v. Germantown Hosp. And Comm. Health Servs.,* 126 F.Supp.2d 878, 880 (E.D.Pa.2000). Complete preemption arises when a plan participant brings an action to recover benefits due under a plan, to enforce rights under a plan, or to clarify future rights under a plan. *See* 29 U.S.C. § 1132(a)(1)(B). Complete preemption creates removal jurisdiction even where plaintiff's complaint does not, on its face, raise a federal question. In contrast, § 514(a) creates express preemption— ERISA merely provides a substantive defense to claims brought under state law. In this instance, removal jurisdiction is not created.

■ Consequently, whether Waldschmidt's Motion for Remand can be granted depends on whether her claim can fairly be characterized as one relating to the administration of benefits. In a series of cases beginning with *Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350 (3d Cir.1995) and culminating in *Pryzbowski v. U.S. Healthcare, Inc.,* 245 F.3d 266 (3d Cir.2001), the Third Circuit court established guidelines for determining whether a claim relates to the administration of benefits. In *Dukes,* the court initially distinguished between claims which focused on the "quality of benefits" received, and claims which focused on the "quantity of benefits" received. *See Dukes,* 57 F.3d at 357 (stating "[i]nstead of claiming that the welfare plans in any way withheld some quantum of plan benefits due, the plaintiffs in both cases complain about the quality of medical treatment that they actually received and argue that the U.S. Healthcare HMO should be held liable under agency and negligence principles. We are confident that a claim about the quality of a benefit received is not a claim under § 502(a)(1)(B) to 'recover benefits due … under the terms of [the]

plan.' "). Because § 502(a) makes no reference to the "quality" of benefits received, the court concluded that such claims are not completely preempted. The next few Third Circuit court decisions also utilized this terminology. *See In Re U.S. Healthcare, Inc.,* 193 F.3d 151, 162 (3d Cir.1999) (observing that "[a]s an administrator overseeing an ERISA plan, an HMO will have administrative responsibilities over the elements of the plan, including determining eligibility for benefits, calculating those benefits, disbursing them to the participant, monitoring available funds, and keeping records. As we held in *Dukes,* claims that fall within the essence of the administrator's activities in this regard fall within section 502(a)(1)(B) and are completely preempted. In contrast … when the HMO acts under the ERISA plan as a health care provider, it arranges and provides medical treatment, directly or through contracts with hospitals, doctors or nurses.… In performing these activities, the HMO is not acting in its capacity as a plan administrator but as a provider of health care, subject to the prevailing state standard of care."); and *Lazorko v. Pennsylvania Hospital,* 237 F.3d 242, 249 (3d Cir.2000) (stating that "[t]hese direct claims, as they are presently pled, challenge the soundness of a medical decision by a health care provider rather than the administration of benefits under an ERISA plan. Thus, Lazorko does not seek a remedy for the administrative denial of a benefit under § 502(a)(1)(B). For that reason, the removal of Lazorko's action to the federal court on the basis of complete preemption was improper.").

Following the Supreme Court's decision in *Pegram v. Herdrich,* 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000),[2] however, the Third Circuit court slightly modified its terminology. In *Pryzbowski v.*

**2.** The *Pegram* decision concerned fiduciary acts, not preemption.

*U.S. Healthcare, Inc.*, 245 F.3d 266 (3d Cir.2001), the court adopted the Supreme Court's terminology of "eligibility decisions" versus "treatment decisions." Referring to the *Pegram* decision, the Third Circuit court stated:

> ... the distinction made there between "eligibility decisions" which "turn on the plan's coverage of a particular condition or medical procedure for its treatment," and "treatment decisions," which are choices in "diagnosing and treating a patent's [sic] condition," ... is ... applicable for complete preemption purposes. Regardless of the language used, the ultimate distinction to make for purposes of complete preemption is whether the claim challenges the administration of or eligibility for benefits, which falls within the scope of § 502(a)(1)(B) and is completely preempted, or the quality of the medical treatment performed, which may be the subject of state action.

*Pryzbowski*, 245 F.3d at 275 (internal citations omitted, brackets in original).[3]

The question before me then is whether Waldschmidt's claim against Aetna focuses upon an eligibility decision or a treatment decision. If the former, then it is completely preempted. If the latter, then the case should be remanded.

The allegations in the Complaint suggest that Waldschmidt challenges a "treatment" decision. She alleges that:

> Despite requests made to Defendant Aetna that Plaintiff's decedent be transferred to a highly-skilled facility, Defendant Aetna made the *medical decision* that decedent should not be transferred to such a facility but should be transferred to Defendant St. John's, a nursing facility which could not provide the highly skilled care which decedent required.

Complaint, ¶ 14. Where an HMO is "arranging for medical treatment," the Third Circuit court declared, it is making treatment decisions rather than eligibility decisions. *See In Re U.S. Healthcare, Inc.*, 193 F.3d 151 (3d Cir.1999) and *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350 (3d Cir.1995).

 Yet I am not bound simply by the carefully crafted allegations set forth in the Complaint. "A federal court may look beyond the face of the complaint to determine whether the plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." *Pryzbowski*, 245 F.3d at 274 (internal quotation marks and citations omitted). A plaintiff "cannot circumvent the preemptive reach of ERISA by artful pleading." *Roark v. Humana, Inc.*, Civ. No. 00–2368, 2001 WL

---

**3.** Aetna contends that the *Pryzbowski* decision represents a change in the law within this Circuit. Aetna states, "[r]elying on *Pegram v. Herdrich*, 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000), however, the Third Circuit recently rejected the 'quality vs. quantity' distinction in favor of preferable terminology adopted by the Supreme Court." I disagree. As observed by another district court within this Circuit:

> The Court did nothing new by applying this familiar dichotomy to determine the scope of ERISA preemption to claims against HMOs. Rather, the *Pryzbowski* opinion attempted to further explain the distinction

between quality and quantity claims by using the terms, adopted from *Pegram* ..., "treatment decisions" and "eligibility decisions." Treatment decisions relate to quality of medical care provided, "which may be the subject of a state [cause of] action." ... Eligibility decisions "challenge[] the administration of or eligibility for benefits which fails within the scope of section 502(a) and [are] completely preempted."

*Trotter v. Perdue Farms, Inc.*, 168 F.Supp.2d 277, 286 (D.Del.2001). I agree with the *Trotter* court that the *Pryzbowski* decision reflects a further refinement of the quality vs. quantity distinction, not a rejection of it.

585874 at *1 (N.D.Tex. May 25, 2001). Consideration of Waldschmidt's health insurance plan and Aetna's uncontradicted representations convinces me that, although Waldschmidt's "artfully crafted" allegations sound like a state tort claim, the core of her claim is actually one concerning the administration of benefits.

The health plan presented by UPS, Robert Waldschmidt's employer, allowed for three options—a primary care physician network, a preferred provider network ("PPN"), and a health maintenance organization. *See* Docket No. 15, Ex. A, p. 18. Aetna represents that Robert Waldschmidt selected the PPN network. I find it of paramount significance that Waldschmidt does not deny that her husband selected the PPN network. The PPN is described as follows:

> If you choose to participate in a Preferred Provider Network, you and your family can also enjoy the benefits of network-based care. *You and your family may seek care from any physician or hospital.* By seeking care from a network provider, you receive higher, in-network benefits, and you are not responsible for completing or filing claim forms. *You may seek care from an out-of-network provider and still receive benefits.* However, you will generally pay more than if you had used an in-network provider. You will also have to file a claim.

*Id.* (emphasis added).

As stated in the Plan documents, the Waldschmidts had the right to choose whichever nursing facility they desired. As such, their medical care was self-directed. Simply stated, Waldschmidt has not adduced any evidence which contradicts the fact that the plan selected allowed her husband to direct his health care. There is simply no indication that Aetna had any role in the selection of St. John's over another, allegedly more skilled, facility.

The only role Aetna could have played is in designating one facility "in-network" and another facility "out-of-network." Decisions of whether certain facilities are in-network or out-of-network involve the administration of benefits or eligibility decisions, not treatment decisions.

A decision rendered in *Rubin–Schneiderman v. Merit Behavioral Care Corp.*, 163 F.Supp.2d 227 (S.D.N.Y.2001) reinforces my conclusion in this regard. In *Rubin–Schneiderman*, plaintiff maintained health coverage with Empire Blue. Cross. He participated in "Blue Choice PPO" which allowed "members to obtain medical care from in-network or out-of-network doctors," with reimbursement benefits differing accordingly, *Rubin–Schneiderman*, 163 F.Supp.2d at 228. Suffering from psychiatric disorders, plaintiff sought admittance to a particular in-patient treatment facility. Following a utilization review, it was determined that intensive out-patient treatment at another facility was appropriate. Nevertheless, plaintiff was informed that ultimate medical decisions were his responsibility. *Id.* Plaintiff subsequently attempted suicide and later filed suit. Defendants removed the action to federal court and plaintiff sought remand.

The court noted that "claims for negligence in improperly failing to approve treatment more closely resemble claims for denial of a plan benefit than for medical malpractice." *Id.* at 230 (citations omitted). The plaintiff sought to overcome this conclusion by looking to the Supreme Court's *Pegram* decision and the Third Circuit line of cases referenced above. The district court distinguished these decisions as follows: .

> The problem with Plaintiff's argument is that both *Pegram* and the Third Circuit line of cases involved UR [utilization review] determinations by an HMO's doctor or administrators, not by inde-

pendent UR agents for a more traditional fee-for-service plan. An HMO as a managed care entity takes on the role of medical provider and medical administrator. *See Pegram,* 120 S.Ct. at 2149. One of the "benefits" that HMOs provide is the doctors who render the medical services. Thus, claims of malpractice against HMOs arising from denial of authorization for treatment readily implicate the quality of care received by the patient, and courts rely on the fact that the HMO was acting as "medical provider" rather than "administrator" in finding that negligence claims are not completely preempted. *See eg. Pryzbowski,* 245 F.3d at 274. *Although Plaintiff's policy features aspects of an HMO, it was not a managed care contract. Rather, the BlueChoice PPO gives patients the ability to choose how to manage their own care by offering different reimbursement schemes depending on whether the patient sees an in-network or out-of-network doctor. A patient has an incentive to see a preferred provider because his out-of-pocket expenses will be less. Unlike an HMO, Empire Blue Cross never sought to undertake responsibility for Plaintiff's treatment.*

*Rubin–Schneiderman,* 163 F.Supp.2d at 231 (emphasis added).

Here, as in *Rubin–Schneiderman,* the Waldschmidts had the ability to choose how to manage their own care. Aetna did not undertake responsibility for Robert Waldschmidt's treatment. Thus, although the allegations in the Complaint sound in negligence, the gravamen of the claim is that Waldschmidt's husband was denied treatment at an out-of-network facility. Because the claim relates to the administration of benefits, it is completely preempted and remand as to this claim is inappropriate.[4]

The claims against the remaining Defendants do not give rise to federal question (or diversity) jurisdiction. Rather, I merely have supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c). Section 1367(c)(3) allows a district court to decline to exercise supplemental jurisdiction where "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(3). Certainly the claims against St. John's Lutheran Care Center, Allegheny General Hospital, West Penn Allegheny Health System, Antonios Zikos, Ravikumar Alagar and Evelyn Berwick substantially predominate over the claim against Aetna. The crux of this case is that Robert Waldschmidt received substandard medical care, and that he died because of such care. The level of care Waldschmidt actually received, and that which he required, form the basis for the medical malpractice and negligence claims asserted against these Defendants. Because these claims predominate over the one arising under ERISA and asserted against Aetna, I decline to exercise supplemental jurisdiction over these claims.

### ORDER OF COURT

AND NOW, this **14th** day of August, 2002, after careful consideration, and for the reasons set forth in the accompanying Opinion, Plaintiff's Motion for Remand

---

4. I do not find Waldschmidt's reference (by letter dated July 29, 2002) to the recent decision in *Bracken v. Matgouranis,* 296 F.3d 160 (3d Cir.2002) to be persuasive. In *Bracken,* the court concluded that a complaint which raised a First Amendment issue in response to an anticipatory defense did not give rise to federal question jurisdiction under 28 U.S.C. section 1331. Here, Aetna does not seek to establish federal question jurisdiction based upon a defense. Rather, federal question jurisdiction arises because Waldschmidt's claim is completely preempted under ERISA.

(Docket No. 9) is DENIED as to the claim asserted against Defendant Aetna U.S. Healthcare, and GRANTED as to all remaining claims against other Defendants. I decline, under 28 U.S.C. § 1367(c)(3) to exercise supplemental jurisdiction over these claims. because they substantially predominate over the claim asserted against Aetna.

Plaintiff's previously-filed Motion for Reconsideration of this Court's Denial of Plaintiff's Motion to Remand (Docket No. 18) is denied as moot.

Finally, Plaintiff is ORDERED to file a Response to Defendant's Motion to Dismiss according to the timetable previously set forth.